Opinion issued November 6, 2008


















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00156-CR

____________


ERIC DEWAYNE KIRKSEY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 400th District Court

Fort Bend County, Texas

Trial Court Cause No. 44,187






MEMORANDUM OPINION

 A jury found appellant, Eric Dewayne Kirksey, guilty of the offense of burglary
of a habitation, (1) and the trial court assessed his punishment at confinement for twenty
years. In four issues, appellant contends that the trial court erroneously admitted
evidence of extraneous offenses and fingerprint-comparison evidence, his counsel
rendered ineffective assistance due to a conflict of interest, and the State engaged in
improper jury argument.

 We affirm.

Factual and Procedural Background

 Michael Luera, a maintenance supervisor at Alta Creek apartments, testified
that on April 10, 2006, he saw appellant driving a white sedan that had been used in
committing a previous burglary at the apartments. After notifying the front office to
call for emergency assistance, Luera located the white sedan and waited for police
officers to arrive. Although Luera noticed that appellant was no longer in the white
sedan, he saw a female in the passenger seat. Luera heard a "loud pop," which
sounded like someone breaking a patio sliding door by prying it with a tool. When
police officers arrived, Luera directed them to an apartment with a broken back patio
door. One of the police officers went to the front of the apartment, and the other
officer told appellant to "come out with [his] hands up." Luera saw appellant peek
through the blinds, come outside, and say "You will have to shoot me because I'm not
going to jail." Appellant then began struggling with the police officer, and Luera ran
to help the police officer hold appellant down. Appellant overpowered them both and
started running. Luera dropped his radio and pursued appellant, first on foot and then
in a golf cart. When Luera caught up to appellant, Luera saw that police officers had
apprehended and handcuffed appellant.

 Fort Bend County Sheriff's Deputy F. Flores testified that he was dispatched
to the Alta Creek apartments regarding a burglary in progress. When Flores arrived,
Luera pointed out an apartment with a broken back patio door. After another deputy
had secured the front door of the apartment, appellant walked outside, and Flores
identified himself. Appellant ran back into the apartment. Flores climbed over the
patio fence and began moving to the door when appellant came outside again. 
Appellant exclaimed, "You're going to have to shoot me." Seeing nothing in
appellant's hands, Flores holstered his weapon and tried to detain appellant, but
appellant resisted. Flores was able to "latch on around [appellant's] neck," but
appellant continued to resist, climbing over the patio fence with Flores on his back. 
Luera tried to help Flores get appellant on the ground, but appellant overpowered
them both and ran away. Flores pursued appellant, at first on foot and then, after
appellant jumped over a high fence, in the car of an elderly gentleman who
volunteered the use of his car to Flores. When Flores caught up to appellant, they
"squared off again," and Flores was able to subdue and handcuff appellant. After
securing appellant, Flores returned to the apartment complex and found the white
sedan that appellant had been driving. Inside the car, Flores found Regina Green.

 Regina Green, appellant's girlfriend, testified that she had met appellant at a
Wal-Mart and began dating him in April of 2005. On the morning of April 10, 2006,
appellant had borrowed Green's white sedan for two hours. When appellant returned
and picked her up, there were several stolen items in the car, including jewelry, a
jewelry box, a digital camera, a camcorder, and a laptop computer. At this time,
Green did not know that the items were stolen, but when she asked appellant about
some of the items, he told her not to worry about them. Green rode in the car with
appellant to the apartment complex. When they arrived, appellant told her that he was
going to pick up some money, and he left her in the car. As she waited for appellant,
Green saw a police car drive up, police officers running, and an employee of the
apartment complex driving over the grass in a golf cart. About twenty minutes later,
police officers approached Green and asked her permission to look in her car. The
officer arrested Green after they found the stolen property.

 Fort Bend County Sheriff's Sergeant L. Phipps testified that two fingerprints
found on cologne bottles inside of the apartment that had been broken into matched
appellant's fingerprints.

 Fort Bend County Sheriff's Detective C. Arredondo testified that on April 10,
2006, appellant made a statement to him. In his statement, appellant stated that he
went to the apartment complex to meet an "associate" named Clarence. Appellant
knew where Clarence lived because he had "been there and [had] seen him on three
to four previous occasions." After driving to the apartment building, appellant saw
Clarence walking towards the apartment. Appellant walked to the apartment and
knocked, but Clarence did not answer. When "three unknown guys exited the
apartment across the hall," appellant "asked them if they knew where Clarence went." 
They told him that Clarence had just walked into the apartment, so appellant walked
around to the patio. At this time, appellant noticed that the patio door was shattered,
and, to get Clarence's attention, he beat on the glass door, further breaking the patio
door. Appellant then entered the apartment to look for Clarence, but Clarence was
not there. When appellant opened the front door to leave, he saw a police officer and
slammed the front door and locked it. When he left through the patio door, appellant
struggled with a police officer at the patio door before he could run away.

Extraneous Offenses

 In his first issue, appellant argues that the trial court erred in admitting
evidence that the officers had found stolen property in Green's car because it was not
relevant, was "more prejudicial than probative," and was "unfairly prejudicial." See
Tex. R. Evid. 402, 403, 404(b).

 We review a trial court's decision to exclude evidence under an abuse of
discretion standard. Rodriguez v. State, 203 S.W.3d 837, 841 (Tex. Crim. App.
2006). Therefore, we will not reverse a trial court as long as its ruling was within the
"zone of reasonable disagreement." Id. 

Rule 404(b)

 Evidence of other crimes is not admissible to prove the character of a person
in order to show that he acted in conformity therewith. Tex. R. Evid. 404(b); Powell
v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). However, this evidence may
be admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R.
Evid. 404(b). When evidence of an extraneous offense is offered to show intent, the
relevance of the extraneous offense derives from the "doctrine of chances"--the
common sense recognition of that logical process which eliminates the element of
innocent intent when similar instances ending in the same result recur. Casey v.
State, 215 S.W.3d 870, 881 (Tex. Crim. App. 2007) (citing Plante v. State, 692
S.W.2d 487, 491-92 (Tex. Crim. App. 1985)); Robbins v. State, 88 S.W.3d 256, 267
n.9 (Tex. Crim. App. 2002) ("Texas courts have adopted and repeatedly applied
Wigmore's 'doctrine of chances' in criminal cases."); see also Rickerson v. State, 138
S.W.3d 528, 531 (Tex. App.--Houston [14th Dist.] 2004, pet. ref'd); Brown v. State,
96 S.W.3d 508, 513 (Tex. App.--Austin 2002, no pet.); 2 John H. Wigmore,
Evidence in Trials at Common Law, § 302 at 241 (Chadbourn rev. 1979)
(discussing doctrine of chances). 

 Appellant asserts that "none of the items [found in Green's car] were from the
apartment where the burglary took place." Appellant also notes that the State
conceded that the stolen items were not linked to the evidence in the instant case. 
However, the State asserted that the stolen property found in Green's car proved
appellant's intent to commit theft in the instant case. Throughout the trial, appellant
challenged the State's theory that appellant had intended to commit a burglary. 
During his opening statement, appellant's counsel stated that "the State will be unable
to prove that there was an intent to commit theft." In his written statement, appellant
asserted that he had intended to meet a friend named Clarence, not take any property
belonging in the complainant's apartment. During his closing argument, appellant's
counsel again focused on the defensive theory that the State had not proved a
culpable intent. In light of the fact that intent was the central issue in this case,
evidence that appellant possessed stolen property in Green's car, which had been used
in previous burglaries at the apartment complex, was relevant to show appellant's
motive, intent, plan, and the absence of mistake or accident in the instant case.

 Accordingly, we hold that the trial court did not err, under Rule 404(b), in
admitting evidence that appellant possessed the stolen property found in Green's car.

Rule 403

 Relevant evidence may be "excluded if its probative value is substantially
outweighed by the danger of unfair prejudice." Tex. R. Evid. 403. The opponent of
the evidence must not only demonstrate the negative attributes of the evidence but
must also show that these negative attributes "substantially outweigh" any probative
value. Page v. State, 125 S.W.3d 640, 649 (Tex. App.--Houston [1st Dist.] 2003,
pet. ref'd) (citing Montgomery v. State, 810 S.W.2d 372, 377 (Tex. Crim. App. 1990)
(op. on reh'g)). 

 The relevant criteria in determining whether the prejudice of extraneous
offense evidence substantially outweighs its probative value include: (1) how
compellingly the extraneous offense evidence serves to make a fact of consequence
more or less probable, (2) the potential the extraneous offense evidence has to
impress the jury "in some irrational but nevertheless indelible way," (3) the time the
proponent will need to develop the evidence, during which the jury will be distracted
from consideration of the indicted offense, and (4) the force of the proponent's need
for this evidence to prove a fact of consequence. Manning v. State, 114 S.W.3d 922,
926 (Tex. Crim. App. 2003) (describing these factors as Montgomery-Mozon factors).

 First, the "fact of consequence" is whether appellant intended to commit a theft
in the complainant's apartment. The evidence that appellant was in possession of
stolen property in Green's car is compelling, tending to prove that appellant intended
to commit a burglary by showing his intent to commit a theft. Second, although there
was some risk that the jury might convict appellant solely because they believed that
he committed an extraneous offense, that risk did not substantially outweigh the
probative value of the evidence as it pertained to appellant's intent. Third, the
majority of the State's case centered on the evidence linking appellant to the
complainant's apartment and his attempt to flee. It is highly unlikely that the
evidence about the previously stolen items distracted the jury from the indicted
offense. See Manning, 114 S.W.3d at 928. Finally, here, the issue of intent was
disputed, and the extraneous offense evidence strengthened the inference that
appellant had intended to commit a theft. 

 Accordingly, we hold that the trial court did not err, under Rule 403, in
admitting evidence that appellant possessed the stolen property found in Green's car.

 We overrule appellant's first issue.

Fingerprint Evidence

 In his second issue, appellant argues that the trial court erred in admitting the
expert fingerprint-comparison testimony of Sergeant Phipps because the State did not
prove, by clear and convincing evidence, that Phipps's expert opinion was reliable. 
However, to preserve error, a complaining party must make a timely request,
objection, or motion and obtain an adverse ruling. Tex. R. App. P. 33.1; Lopez v.
State, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008). Here, appellant did not object
to Phipps's testimony at trial. By failing to object to Phipps's testimony, appellant
failed to preserve this issue for our review. Accordingly, we hold that appellant has
waived that issue for our review. (2)

 We overrule appellant's second issue.

Conflict of Interest

 In his third issue, appellant argues that his trial counsel's "relationship with a
testifying witness [for the State] represented a conflict of interest, and this conflict
had an adverse effect [on] counsel's performance." 

 Ineffective assistance of counsel may result when an attorney labors under a
conflict of interest. Acosta v. State, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007);
Gaston v. State, 136 S.W.3d 315, 318 (Tex. App.--Houston [1st Dist.] 2004, pet.
struck). In order for a defendant to demonstrate a violation of his right to effective
assistance of counsel based on a conflict of interest, he must show that (1) his counsel
was burdened by an actual conflict of interest and that (2) the conflict had an adverse
impact on specific instances of counsel's performance. Cuyler v. Sullivan, 446 U.S.
335, 348, 100 S. Ct. 1708, 1718 (1980); Ex parte Morrow, 952 S.W.2d 530, 538 (Tex.
Crim. App. 1997); Gaston, 136 S.W.3d at 318. An actual conflict of interest exists
only if counsel is required to choose between either advancing his client's interest in
a fair trial or advancing other interests to the detriment of his client. Acosta, 233
S.W.3d at 355; Williams v. State, 154 S.W.3d 800, 803 (Tex. App.--Houston [14th
Dist.] 2004, pet. ref'd). It is not enough for appellant to show a possible conflict of
interest. Pollan v. State, 612 S.W.2d 594, 596 (Tex. Crim. App. 1981); Williams, 154
S.W.3d at 803.

 Here, appellant argues that a conflict of interest exists because his trial counsel
and Deputy Arredondo, a testifying witness for the State, "are cousins and have
known each other all their lives." Arredondo's testimony primarily concerned
appellant's statement, which Arredondo took. Appellant, however, has not directed
us to any evidence that defense counsel was required to choose between advancing
appellant's interests and advancing other interests or that any possible conflict had
an impact on specific instances of counsel's performance. See Cuyler, 446 U.S. at
348, 100 S. Ct. at 1718; Acosta, 233 S.W.3d at 355. Accordingly, we hold that
appellant has not demonstrated that his trial counsel was ineffective in his
representation of appellant.

 We overrule appellant's third issue.

Improper Jury Argument

 In his fourth issue, appellant asserts that the State made "improper statements"
in its closing argument to the jury. Permissible jury argument by the State generally
falls into four categories: (1) summation of the evidence; (2) reasonable deductions
from the evidence; (3) pleas for law enforcement; and (4) response to opposing
counsel. Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000); Dominguez
v. State, 125 S.W.3d 755, 763 (Tex. App.--Houston [1st Dist.] 2003, pet. ref'd). To
preserve jury argument error a defendant must contemporaneously object and obtain
an adverse ruling. Cooks v. State, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992);
Dominguez, 125 S.W.3d at 763. If the objection is sustained, the defendant must
request an instruction to disregard the argument and, if granted, must move for
mistrial. Cooks, 844 S.W.2d at 727-28; Dominguez, 125 S.W.3d at 763.

 Appellant first complains that the State improperly argued, "The defense can
subpoena Clarence to come testify, even if Clarence doesn't want to come testify, if
he existed, just the way we subpoenaed Ms. Green to testify." Appellant's counsel
did not object to this portion of the State's argument, but appellant asserts that this
portion of the argument constitutes fundamental error. However, it is not
fundamental error for the State to comment on a defendant's failure to call a witness. 
See Bible v. State, 162 S.W.3d 234, 249 (Tex. Crim. App. 2005) (stating that it is
"well-settled" that State may comment on defendant's failure to call certain
witnesses). Because appellant did not object, no error was preserved. Cooks, 844
S.W.2d at 727; Dominguez, 125 S.W.3d at 763. Accordingly, we hold that because
the State's argument does not constitute fundamental error, appellant has waived this
point for review.

 Appellant next complains that the State improperly commented on his failure
to testify. During the State's argument the following exchange occurred:

 [The State]: Or maybe the Defendant's statement is not correct.
. . . Ask yourself: Why would somebody [] see an
officer standing in the breezeway. Why would you
slam the door and go back the other way? What's in
his mind? If you were just visiting Clarence's
apartment, why would you slam the door and run? 
No, he runs out the back.

 

 Why wouldn't the Defendant tell us in his statement
that he's never been in Clarence's apartment? 
Because that's what the defense wanted you to
believe.


 [Appellant]: I'm going to object, Your Honor. This is getting
really close to commenting on the fact that the
Defendant did not testify in this case. We would
strongly object to any argument coming close to
that.


 [The trial court]: Sustained.


 [The State]: Ladies and gentlemen, the Defendant's testimony in
this case comes in his statement, okay? Don't
consider the fact- 


 [Appellant]: Objection, Your Honor, talking about the Defendant
testifying.

 

 [The trial court]: Sustained.


 [The State]: Don't consider the fact that he didn't testify in court
here. Don't consider that. That would be wrong. 
Do consider what's in this statement. What's in this
statement is properly warned, properly authored,
unobjected to, admitted into evidence, and it's for
you to consider.

 

 Notice in the statement the Defendant calls it - at the
end writes, in his own handwriting, "the apartment
in question"? What happened to Clarence's
apartment? Would you go in - why would you go
pick up a laptop and a camcorder, a camera and
jewelry from some bushes near Auto Zone on
Bissonnet and not know it was stolen?

 Prosecutorial argument is a comment on a defendant's failure to testify if "the
language used was manifestly intended or was of such a character that the jury would
necessarily and naturally take it as a comment on the defendant's failure to testify." 
Busby v. State, 253 S.W.3d 661, 666 (Tex. Crim. App. 2008) (quoting Cruz v. State,
225 S.W.3d 546, 548 (Tex. Crim. App. 2007)). Any challenged argument should be
looked at in its full context based on what it would necessarily and naturally mean to
a jury. Cruz, 225 S.W.3d at 549. "[W]hen a defendant makes a statement which is
admitted into evidence, the State's reference to the statement and comparison between
the statement and the other evidence collected is not a comment on the defendant's
failure to testify or his right to remain silent." Garcia v. State, 126 S.W.3d 921, 924
(Tex. Crim. App. 2004). Here, in its argument, the State referred to appellant's
written statement, which had been admitted into evidence. In doing so, the State
highlighted the inconsistency of appellant's statement that he had entered the
apartment of an "associate" named "Clarence" with the fact that he had actually
entered the apartment of the complainant, not "Clarence." Accordingly, we hold that
the State did not improperly comment on the defendant's failure to testify.

 Finally, appellant complains that at the beginning of the State's closing
argument, it explained, "The Defendant has decided to go to the Judge for
punishment, so the Judge can consider the full range of punishment, everything from
probation to time in jail. But if there's a 'not guilty,' the process stops. It stops right
here, and it ends." Appellant did not object to these comments at trial, so no error
was preserved for appeal. Cooks, 844 S.W.2d at 727; Dominguez, 125 S.W.3d at 763.
Accordingly, we hold that appellant has waived this complaint for review.

 We overrule appellant's fourth issue.

Conclusion

 We affirm the judgment of the trial court.


 


 Terry Jennings

 Justice


Panel consists of Justices Jennings, Hanks, and Bland.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003).
2. Within this issue, appellant also "complains of his counsel's ineffectiveness" for
allowing the testimony of Sergeant Phipps without objection or voir dire. Appellant
raises this complaint in one sentence without any substantive argument or citation to
any authority; therefore, appellant has also waived this argument. See Tex. R. App.
P. 38.1(h) ("The brief must contain clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record.").